[No. 4893.   Decided December 20, 1904.]

THE STATE OF WASHINGTON, *Respondent,* v. ROMAINE L.
BOGARDUS, *Appellant.*[1]

CRIMINAL LAW—INFORMATION—CERTAINTY—BILL OF PARTICU-
LARS. There is no provision in our criminal procedure for attack-
ing an information for lack of certainty by motion to make more
definite and certain, or by demand for a bill of particulars, but the
remedy is by demurrer.

CRIMINAL LAW — EMBEZZLEMENT — INFORMATION—SUFFICIENCY.
An information for embezzlement by the secretary of a society is
not demurrable for want of sufficient facts or lack of certainty
when it charges that, on a certain day, the defendant was agent
of the society and was intrusted by the society with certain
moneys belonging to the society, and converted the same to his
own use; and it was not necessary to make it more certain by
stating the acts constituting the conversion, showing the par-
ticular transaction relied upon.

SAME—BILL OF PARTICULARS—DISCRETION. In such a case, it is
not an abuse of discretion to refuse to require the state to furnish
a bill of particulars, and such refusal can be reversed only for
abuse of discretion.

CRIMINAL LAW — EMBEZZLEMENT — EVIDENCE — SUFFICIENCY —
VARIANCE. Under an indictment charging the secretary of a
society with the embezzlement of $1,000 intrusted to him by the
society on October 3, 1902, there is sufficient proof of the crime
charged where it appears that, prior to that time, the defendant
was short in his accounts in excess of said sum, having failed to
credit $2,000 previously paid by one W for stock, that on said
date, said W having withdrawn on orders $1,000, the previous re-
ceipt for $2,000 to him was taken up and a new one issued for
$1,000 of the society's stock, and that no record of any kind was
made of these transactions, and no notice given to the officers;
since the deposit of such stock with the society without crediting
it to the account of W and defendant's use of it to reduce his own
indebtedness to the society, was an embezzlement by the defend-
ant, under Bal. Code § 7119, fixing the crime upon any agent who
"shall convert to his own use or shall fail to account" for any
property intrusted to him (Fullerton, C. J., and Anders, J., dis-
senting).

[1]Reported in 78 Pac. 942.

Appeal from a judgment of the superior court for Spokane county, Richardson, J., entered February 23, 1904, upon a trial and conviction of the crime of embezzlement. Affirmed.

*Townsend & Moore* and *Henley, Kellam & Lindsley* (*O. C. Moore,* of counsel), for appellant. The information was insufficient, stating only conclusions without any of the acts or facts to constitute the offense. *United States v. Hess,* 124 U. S. 483, 8 Sup. Ct. 571; *United States v. Carll,* 105 U. S. 611; *United States v. Britton,* 107 U. S. 655, 2 Sup. Ct. 512; *Batchelor v. United States,* 156 U. S. 426, 15 Sup. Ct. 446; *Cochran v. People,* 175 Ill. 28, 51 N. E. 845; *State v. Farrington,* 59 Minn. 147, 60 N. W. 1088, 28 L. R. A. 395; *State v. Howard,* 66 Minn. 309, 68 N. W. 1096, 61 Am. St. 403, 34 L. R. A. 181; *State v. Carey,* 4 Wash. 430, 30 Pac. 729; *United States v. Simmons,* 96 U. S. 360; *State v. Krug,* 12 Wash. 288, 41 Pac. 126; *Pettibone v. United States,* 148 U. S. 197, 13 Sup. Ct. 542; *People v. Ward,* 110 Cal. 369, 42 Pac. 894. The court erred in the admission of evidence respecting distinct and separate transactions having no relation to the crime charged. *State v. Bokien,* 14 Wash. 403, 44 Pac. 889; *State v. Gottfreedson,* 24 Wash. 398, 64 Pac. 523; *Berghoff v. State,* 25 Neb. 213, 41 N. W. 136; *Cowan v. State,* 22 Neb. 519, 35 N. W. 406; *People v. Hill* (Cal.), 34 Pac. 854; *State v. Pittam,* 32 Wash. 137, 72 Pac. 1042. It was error to receive evidence of confessions without proof of the *corpus delicti.* 15 Ency. Plead. & Prac., 380; 6 Am. & Eng. Ency. Law, 569 (2d ed.); *United States v. Mayfield,* 59 Fed. 119; *People v. Hall,* 48 Mich. 482, 12 N. W. 665; 42 Am. Rep. 477; *People v. Whiteman,* 114 Cal. 338, 46 Pac. 99; *People v. Ward,* 134 Cal. 301, 66 Pac. 374. To

constitute embezzlement the owner must be deprived of his property by an adverse holding or use, and an acquittal should accordingly have been directed. 2 Bishop New Crim. Law, §§ 372, 373, 379; 10 Am. & Eng. Ency. Law, 904 (2d ed.); *Commonwealth v. Este,* 140 Mass. 279, 2 N. E. 769; *State v. Cunningham,* 154 Mo. 161, 55 S. W. 282; *Spaulding v. Petin* (Ill.), 49 N. E. 998; *Chaplin v. Lee,* 18 Neb. 440, 25 N. W. 609; *McAleer v. State,* 46 Neb. 116, 64 N. W. 358; *State v. Hill,* 47 Neb. 456, 66 N. W. 541.

*Horace Kimball* and *R. M. Barnhart,* for respondent, contended among other things, that the information was sufficiently definite without alleging the circumstances. *State v. King,* 81 Iowa 587, 47 N. W. 775; *People v. Gordon,* 133 Cal. 338, 65 Pac. 746; Bishop, Statutory Crimes, § 422 (3d ed.); *State v. Broughton,* 71 Miss. 90, 13 South. 885; *State v. Crosswhite,* 130 Mo. 358, 32 S. W. 991, 51 Am. St. 571; *State v. Mathis,* 106 La. 263, 30 South. 834; *People v. Cobler,* 108 Cal. 538, 41 Pac. 401; *Keys v. State,* 112 Ga. 392, 37 S. E. 762, 81 Am. St. 63; *State v. Turner,* 10 Wash. 94, 38 Pac. 864; *Malcolmson v. State,* 25 Tex. App. 267, 8 S. W. 468. It is sufficient to allege the offense in the language of the statute. *People v. Taylor,* 96 Mich. 576, 56 N. W. 27, 21 L. R. A. 287; *United States v. Pond,* 2 Curtis 265; *United States v. Britton,* 107 U. S. 655, 2 Sup. Ct. 512; *United States v. Harper,* 33 Fed. 471; *State v. Turner,* 10 Wash. 94, 38 Pac. 864; *State v. Lewis,* 31 Wash. 515, 72 Pac. 121; *State v. Lewis,* 31 Wash. 75, 71 Pac. 778; *State v. Hoshor,* 26 Wash. 643, 67 Pac. 386; *People v. Hill,* 3 Utah 334, 3 Pac. 75; *State v. Whiteman,* 9 Wash. 402, 37 Pac. 659. The evidence of later acts respecting defendant's method of keeping his accounts was admis-

sible to show his intent. *State v. Pittam,* 32 Wash. 137,
72 Pac. 1042; *People v. Gray,* 66 Cal. 271, 5 Pac. 240;
*State v. Myers,* 82 Mo. 558, 52 Am. Rep. 389; *Commonwealth v. Tuckerman,* 10 Gray 173; *People v. Neyce,* 86
Cal. 393, 24 Pac. 1091; *Territory v. Meyer* (Ariz.), 24
Pac. 183; *People v. Bidleman,* 104 Cal. 608, 38 Pac.
502; *People v. Ward,* 134 Cal. 301, 66 Pac. 372; *State
v. Coss,* 12 Wash. 673, 42 Pac. 127; *State v. Newton,*
29 Wash. 373, 70 Pac. 31; *State v. Carpenter,* 32 Wash.
254, 73 Pac. 357. The confessions were competent, with
slight corroboration, to prove the *corpus delicti. People
v. Badgley,* 16 Wend. 53; *Sullivan v. State,* 58 Neb. 796,
79 N. W. 721; *Hopt v. People,* 110 U. S. 574, 4 Sup.
Ct. 202, 28 L. Ed. 262; *Flower v. United States,* 116
Fed. 241; *State v. Keller* (Idaho), 70 Pac. 1051; *State
v. Hall,* 31 W. Va. 505, 7 S. E. 422; *People v. Jaehne,*
103 N. Y. 182, 8 N. E. 374; *People v. Elliott,* 106 N.
Y. 288, 12 N. E. 602; *United States v. Bassett,* 5 Utah
131, 13 Pac. 237; *Roberts v. People,* 11 Colo. 213, 17
Pac. 637; *People v. Harris,* 114 Cal. 575, 46 Pac. 602;
*People v. Tarbox,* 115 Cal. 57, 46 Pac. 896; *State v.
Fitzgerald,* 63 Iowa 268, 19 N. W. 202; *Floyd v. State,*
82 Ala. 16, 2 South. 683; *Lambright v. State,* 34 Fla.
564, 16 South. 582; *Jackson v. State* (Texas), 16 S. W.
247; *Holland v. State,* 39 Fla. 178, 22 South. 298; *State
v. Guild,* 5 Halsted 163 (N. J. L.), 18 Am. Dec. 404;
*State v. Hodgskins,* 19 Me. 155, 36 Am. Dec. 742. And
the confession may be admitted before the other evidence
is offered. *People v. Jones,* 123 Cal. 65, 55 Pac. 698;
*People v. Whiteman,* 114 Cal. 338, 46 Pac. 99; *People
v. Ward,* 134 Cal. 301, 66 Pac. 372. If there was error
in this order of proof, it was cured by the subsequent reception of corroborative proof. *Floyd v. State* and *Hol-*

*land v. State, supra; Anthony v. State,* 44 Fla. 1, 32 South. 818.

MOUNT, J.—The appellant was convicted of the crime of embezzlement, and, from the judgment and sentence pronounced against him, he appeals.

The record discloses that the appellant was, from the year 1898 till the end of the year 1902, the secretary of the Spokane Building & Loan Society. As such secretary it was a part of his duties to take a receipt for all moneys received, belonging to the society, record the amount in its books, showing when and from whom received, and deposit the same in the authorized depository of the society, notifying its treasurer of such deposit by sending him a duplicate of the deposit ticket received at the time of making the deposit. It was further his duty to make, to the trustees of the society, periodical reports of the business done by the society, showing, among other things, the total amount of money received, the amount disbursed, and the cash balance on hand belonging to the society. The appellant also acted as secretary of the board of trustees. All claims against the society, all applications for loans, and, in fact, all the business of the society calling for the action of the trustees, reached them through his hands. The treasurer of the society kept only a cash account. He charged himself with the amount of money deposited to his credit, and credited himself with the checks for payment of moneys which he was required to countersign. His books, however, showed nothing more than mere cash balances. They did not show from whom the money was received, nor to whom payments were made. In a word, it was made the duty of the secretary to keep accounts showing all of the business transactions of the society, and, if his books were honestly kept,

they would show at all times the exact condition of the society's affairs.

Shortly after he entered upon his duties as secretary, the appellant began to appropriate to his own use the money of the society. These peculations he was able to conceal from the officers of the society and the accountants who examined his accounts at the end of each year, by the process of withholding from entry on the books enough of his collections, made on behalf of the corporation, to keep a balance between his books and his cash on hand. The amount so taken up to June 30, 1903, was something over $2,500. Some time prior to the last named date, the society called in its eight per cent interest bearing stock to an equal amount. One H. M. Whitehouse held stock of the character called in, and, pursuant to the notice sent him, called at the office of the company to make the exchange. His stock amounted to $2,046.67, and, on his surrendering his certificates, a check on the company fund for this amount was given him. On its receipt he immediately indorsed it back to the company, at the same time making an application for $2,000 in other stock, taking the difference between the amount of his application and the amount of the check, in cash. A receipt was then given him by the secretary, showing he had on deposit with the society the sum of $2,000. No record of any kind was made on the books of the company showing this transaction with Whitehouse, and the application itself was kept concealed from the other officers of the company. The check, however, having been previously countersigned by the treasurer, was passed by the secretary through the depository bank, and a counterbalancing deposit ticket for a like amount placed to the credit of the society.

When the check was indorsed to the society by Whitehouse, he informed the secretary that he desired to use a

part, at least, if not the whole, of the sum so deposited, in other channels, and, between that date and October 3 following, withdrew, on orders in cash, amounts aggregating $1,000, all of which, with the possible exception of . an order for $350, was taken from the society's funds. At the last named date, the receipt for $2,000 was taken up, and a new one issued for $1,000 of the society's stock. At about this time, the president of the society, without notice to the secretary, put an accountant on the books, who, within a short time thereafter, discovered certain defalcations. It was discovered, also, that the secretary, in his endeavor to cover up the defalcations, after the accountant had begun his work, had misapplied other funds of the society; that is, he had collected outside accounts, and put the money to the credit of the society without making the corresponding entry showing the collections, and he also withheld from payment an order for $2,046.67, drawn on the treasurer, that his credit with the society might appear to be larger by that amount.

The information upon which the appellant was tried was as follows:

"That the said defendant, Romaine L. Bogardus, on the 3d day of October, 1902, in the county of Spokane and state of Washington, then and there being the agent of the Spokane Building & Loan Society, a corporation, said Spokane Building & Loan Society then and there being a corporation, was then and there by virtue of being such agent of the said corporation intrusted by said corporation with the sum of one thousand ($1,000) dollars in bank notes, money and currency of the United States of the value of one thousand ($1,000) dollars, the same then and there being the money and property of said corporation, and that the said defendant did then and there by virtue and on account of being such agent of said corporation, as aforesaid, and by virtue and on account of being intrusted with the said money by said corporation,

as aforesaid, receive and take into his, the said defendant's, possession the money and property aforesaid, which he, the said defendant, then and there held for and in the name and on account of said corporation, and that he, the said defendant, did then and there wilfully, unlawfully, feloniously and fraudulently convert to his, the said defendant's, own use said property and money so intrusted to said defendant, as aforesaid."

On being required to plead, the appellant moved that the state be required to make the information more definite and certain, by stating the acts constituting the transaction by which the appellant converted the money of the society to his own use, as alleged in the information, so that the appellant might be apprised of the particular transaction relied upon. On this motion being overruled, he demanded a bill of particulars, which being denied, he demurred to the information on several grounds, among which was the ground that it did not apprise the appellant of the nature and cause of the accusation against him. This demurrer was also overruled, whereupon he pleaded not guilty. At the opening of the trial, the prosecution elected to base its claim for a conviction upon the transaction with Mr. Whitehouse above set out, and it was upon that transaction he was tried and convicted.

The appellant first assigned that the court erred in overruling his motion to make the information more definite and certain, in refusing to direct that a bill of particulars be furnished, and in overruling the demurrer to the informtaion. With reference to the motion to make more definite and certain, it can be said that it is not technically a recognized mode of attacking an information or indictment in this state. The statute, it is true, prescribes certain requisites for an information or indictment, among which is that it must be direct and certain as regards the

crime charged and the particular circumstances of the crime charged, when they are necessary to constitute a complete crime, and, also, that the act or omission charged as the crime must be stated in ordinary and concise language, without repetition, and in such manner as to enable a person of common understanding to know what is intended. Yet the only method pointed out by statute for attacking the indictment or information, where it fails in these partculars, is by demurrer. But, treating the motion as a demurrer and considering it in connection with the demurrer actually filed, we do not think the question raised thereby is well taken. The information charges, that the appellant on a day certain was the agent of the society named; that he received on that day moneys belonging to his principal by reason of his trust, to the amount of $1,000; that he fraudulently and feloniously converted the same to his own use. These acts constitute all the elements of the crime of embezzlement prescribed by the statute, and we think the information is clearly sufficient. *State v. Turner,* 10 Wash. 94, 38 Pac. 864; *State v. Hoshor,* 26 Wash. 643, 67 Pac. 386; *State v. Lewis,* 31 Wash. 75, 71 Pac. 778.

The application for a bill of particulars is likewise without sanction in the statutes relating to criminal procedure. While statutes governing the civil procedure require that the courts may require a bill of particulars to be furnished in particular cases, yet this practice is not made applicable to criminal procedure, and, if the power rests in the courts at all when exercising jurisdiction in criminal cases, it must be found among its inherent powers. But whether or not the power does rest within the court, it is not necessary here to determine; for, conceding that it does, it is a discretionary power, and the refusal of the court to exercise it can be reviewed only

for abuse of discretion, and we find no such abuse in the present record.

The next objection is that the evidence was insufficient to sustain the verdict of the jury. As we have said, the state based its right to a conviction upon the transaction had with Mr. Whitehouse. The evidence shows conclusively that, at the time of this transaction, the appellant was short in his accounts with the society some $2,500. This money had been converted by appellant to his own use prior to that time. When appellant issued and delivered the check of the association for $2,046.67 to Mr. Whitehouse, it was indorsed by Mr. Whitehouse and returned to appellant, who paid Whitehouse $46.67 in cash, leaving $2,000 to the credit of Whitehouse with the society. No record of any kind was made of this transaction upon the books of the building and loan society. By this transaction the shortage of the appellant was diminished and concealed by the amount of the deposit. Appellant subsequently, and before any shortage was discovered, paid upon orders of Whitehouse $1,000, still leaving $1,000 due Whitehouse from the society. Thereafter, when a shortage was discovered and appellant was confronted therewith by the board of directors, he then, for the first time, acknowledged this transaction. We think these facts made out a clear case of embezzlement under our statute, which provides that:

"If any agent, clerk, officer, servant, or person to whom any money or other property shall be intrusted, with or without hire, shall fraudulently convert to his own use, or shall take and secrete the same with intent fraudulently to convert the same to his own use, or shall fail to account to the person so intrusting it to him, he shall be guilty of larceny . . ." Bal. Code, § 7119.

When appellant received the check for $2,046.67, and deposited it to the credit of the society for the purpose of

covering up his own shortage, already existing to that amount, he thereby converted it to his own use. The fact that he made no entry upon the books of the society of the amount received was evidence of a fraudulent intention. *State v. Baumhager*, 28 Minn. 227, 9 N. W. 704; *State v. Trolson*, 21 Nev. 419, 32 Pac. 930; *Bowman v. Brown*, 52 Iowa 437, 440, 3 N. W. 609; *Spalding v. People*, 172 Ill. 40, 49 N. E. 993; *American Bonding etc. Co. v. Milwaukee etc. Co.*, 91 Md. 733, 48 Atl. 72.

Suppose that appellant had taken this check for $2,046.67, or any part of it, and paid it to some third party without the knowledge and consent of the society, in liquidation of a personal debt owing by appellant to such third party; such misappropriation of the fund would amount to embezzlement, because the payment of the fund upon his private account would be a fraudulent conversion of such fund to his own use. The fact that appellant paid the money to the society for his own use, in such a way as to liquidate a debt really owing but unknown to the society, is not capable of reasonable distinction from the supposed case. It is true, the check, or money which it represented, was intrusted by Whitehouse to appellant, to be placed with the funds of the society as a credit to Whitehouse. The society thereby became immediately liable to Whitehouse for that amount, and it is also true that the identical check intrusted was deposited with the society; but, instead of being deposited in the ordinary way, it was diverted to an unlawful use—the use of the appellant. If money is handed to the cashier of a bank to be placed on deposit in such bank to the credit of the depositor, and the cashier uses such money to pay his own obligation to the bank, without the knowledge of the depositor or the bank, he is certainly guilty of embezzlement under the statute. This

is, in fact, what appellant did. We think the evidence was clearly sufficient to sustain the verdict.

There is no error in the record. The judgment is affirmed.

HADLEY, and DUNBAR, JJ., concur.

FULLERTON, C. J. (dissenting)—The appellant was charged with embezzling a certain fund. The proof is that he made a false entry in his books concerning this fund to cover up a previous embezzlement. I do not think this sufficient proof of the crime charged. The judgment should be reversed.

ANDERS, J., concurs with FULLERTON, C. J.