IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | |
| | ) | No. 39311-9-III |
| Appellant, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| ANDREW V. DRAKE, | ) | UNPUBLISHED OPINION |
| | ) | |
| Respondent. | ) | |

COONEY, J. — A jury found Andrew Drake guilty of 28 felonies and 2

misdemeanors. Prior to trial, Mr. Drake pleaded guilty to bail jumping. At sentencing,

the State advocated for an offender score of 5 on each felony conviction. The court,

sua sponte, found many of the counts constituted the same criminal conduct, calculated

Mr. Drake's offender score at 3, and ordered a standard range sentence on each felony

count. The State appeals.

BACKGROUND

After a fire ravaged Mr. Drake's father's home, Mr. Drake stole nine firearms and a pellet gun from his father's safe. Mr. Drake later delivered two of the firearms to Kyndal Swift. Mr. Drake gave the remaining firearms and a pellet gun to Joe Benefield. Mr. Benefield voluntarily turned the stolen firearms and pellet gun over to law enforcement.

By amended information, the State charged Mr. Drake with nine counts of theft of a firearm (theft),[1] alleged to have occurred between December 1, 2018, and October 22, 2019 (the range for counts 8 and 9 concludes on October 25, 2019). The State also charged nine counts of possession of a stolen firearm (possession),[2] alleged to have occurred between December 1, 2018, and October 22, 2019 (the range for counts 27 and 28 concludes on October 25, 2019). The State charged Mr. Drake with two counts of trafficking in stolen property in the first degree (trafficking)[3] for the firearms delivered to Ms. Swift, and eight counts of trafficking[4] for the firearms and pellet gun delivered to Mr. Benefield.

---

[1] Counts 1-9.

[2] Counts 11-17, 27-28.

[3] Counts 29-30.

[4] Counts 19-26 (Count 26 related to a pellet gun).

In count 31, the State alleged Mr. Drake committed the crime of bail jumping by knowingly failing to appear in court on January 7, 2020 after a court order released him. Mr. Drake pleaded guilty to count 31 prior to trial.

At sentencing, the State calculated an offender score of 5 on each felony conviction. The State counted the nine theft convictions as the same criminal conduct (1 point), counted the two possession convictions related to the firearms given to Ms. Swift as the same criminal conduct (1 point), counted the seven possession convictions related to the firearms given to Mr. Benefield as the same criminal conduct (1 point), counted the two trafficking convictions related to Ms. Swift as the same criminal conduct (1 point), counted the eight trafficking convictions related to Mr. Benefield as the same criminal conduct (1 point), and added 1 point for the bail jumping conviction. Defense counsel initially agreed with the State's proffered offender score.

The trial court challenged the State's calculation, noting that the theft convictions and possession convictions alleged the same criminal intent, the same time and place, and the same victim. In response, the State directed the court to the affidavit of probable cause to establish a substantial break in time. The court declined to rely on the probable cause affidavit to resolve any factual disputes. Although the court noted it was the defendant's burden to establish same criminal conduct, it recognized the State's analysis was "counter to what the case law says." Rep. of Proc. (RP) at 331.

Ultimately, the court found the nine theft convictions and nine possession convictions constituted the same criminal conduct (1 point), the two trafficking convictions related to Ms. Swift were the same criminal conduct (1 point), the eight trafficking convictions related to Mr. Benefield were the same criminal conduct (1 point), and added one point for the bail jumping conviction. Mr. Drake was then sentenced within the standard range under an offender score of 3 on each count.

The State timely appeals.

## ANALYSIS

On appeal, the State argues the trial court abused its discretion in calculating Mr. Drake's offender score, in failing to place the burden of proving same criminal conduct on Mr. Drake, and in declining to consider the affidavit of probable cause. We disagree with each of the State's arguments and affirm.

A court "abuses its discretion when it acts on untenable grounds or its ruling is manifestly unreasonable." *State v. Gaines*, 194 Wn. App. 892, 896, 380 P.3d 540 (2016) (citing *State v. Barnes*, 85 Wn. App. 638, 669, 932 P.3d 669 (1997)). A "decision is based 'on untenable grounds' or made 'for untenable reasons' if it rests on facts unsupported in the record or was reached by applying the wrong legal standard." *State v. Rohrich*, 149 Wn.2d 647, 654, 71 P.3d 638 (2003) (quoting *State v. Rundquist*, 79 Wn. App. 786, 793, 905 P.2d 922 (1995)). A "decision is 'manifestly unreasonable' if the court, despite applying the correct legal standard to the supported facts, adopts a view

No. 39311-9-III
*State v. Drake*

'that no reasonable person would take,' and arrives at a decision 'outside the range of acceptable choices.'" *Rohrich*, 149 Wn.2d at 654 (quoting *State v. Lewis*, 115 Wn.2d 294, 298-99, 797 P.2d 1141 (1990). Indeed, a trial court's discretion is broad:

> [W]e give great deference to the trial court's determination: even if we disagree with the trial court's ultimate decision, we do not reverse that decision unless it falls outside the range of acceptable choices because it is manifestly unreasonable, rests on facts unsupported by the record, or was reached by applying the wrong legal standard.

*State v. Curry*, 191 Wn.2d 475, 484, 423 P.3d 179 (2018) (citing *State v. Dye*, 178 Wn.2d 541, 548, 309 P.3d 1192 (2013)).

COURT'S CALCULATION OF MR. DRAKE'S OFFENDER SCORE

The State asserts the trial court misapplied the law when it failed to recognize that Mr. Drake's intent in possessing the firearms changed when he "divided the spoils of his theft into two batches," thereby possessing the firearms at different times and places. Br. of Appellant at 22.[5]

A court's determination of same criminal conduct will not be disturbed unless the sentencing court abuses its discretion or misapplies the law. *State v. Graciano*, 176 Wn.2d 531, 536, 295 P.3d 219 (2013). "[W]hen the record supports only one conclusion

---

[5] The State does not challenge the trial court's finding that the nine theft convictions constitute the same criminal conduct nor its findings that the two trafficking convictions related to Ms. Swift are the same criminal conduct as are the eight counts related to Mr. Benefield.

5

on whether crimes constitute the 'same criminal conduct,' a sentencing court abuses its discretion in arriving at a contrary result." *Id.* at 537-38 (quoting *State v. Rodriguez*, 61 Wn. App. 812, 816, 812 P.2d 868 (1991)). "[W]here the record adequately supports either conclusion, the matter lies in the court's discretion." *Id.* at 538.

Trial court discretion has been described as "sound judgment exercised with regard to what is right under the circumstances and without doing so arbitrarily or capriciously." *State ex rel. Carroll v. Junker*, 79 Wn.2d 12, 26, 482 P.2d 775 (1971) (citing *State ex rel. Clark v. Hogan*, 49 Wn.2d 457, 303 P.2d 290 (1956)). "Where the decision or order of the trial court is a matter of discretion, it will not be disturbed on review except on a clear showing of abuse of discretion." *Id.*

Before imposing a sentence, the court shall conduct a hearing to determine the offender score used to calculate a sentencing range for each conviction. RCW 9.94A.500, .525. Generally, when a defendant is sentenced for multiple current offenses, the sentence range for each offense is determined by counting other current convictions "as if they were prior convictions." RCW 9.94A.589(1)(a). However, "if the court enters a finding that some or all of the current offenses encompass the same criminal conduct" then the current offenses constituting the "same criminal conduct" are "counted as one crime." *Id.* Same criminal conduct determinations rest within the sound discretion of the trial court. *See Graciano*, 176 Wn.2d at 536.

6

"Same criminal conduct" means "two or more crimes that [(1)] require the same criminal intent, are committed at [(2)] the same time and place, and [(3)] involve the same victim." RCW 9.94A.589(1)(a). We construe "same criminal conduct" narrowly and will not apply it if any one of the three elements are absent. *State v. Porter*, 133 Wn.2d 177, 181, 942 P.2d 974 (1997).

Here, regardless of who Mr. Drake delivered the firearms to, the theft and possession convictions were directed at the same victim: Mr. Drakes' father. As charged and proved by the State, the crimes were committed during the same broad time period and originated at the same place—on or between December 1, 2018, and October 25, 2019, at Mr. Drake's father's devastated home. Thus, the determinative question is whether each of the theft and possession convictions required the same "statutory intent" as set forth by the Supreme Court's recent decision in *State v. Westwood*, 2 Wn.3d 157, 166, 534 P.3d 1162 (2023).

Under *Westwood*, each of Mr. Drake's theft and possession convictions plausibly constitute the same criminal conduct as the other theft and possession convictions. Mr. Drake's nine theft convictions necessarily have the same "statutory intent" because they are all violations of the same statute. *Id*. at 167-68; RCW 9A.56.300. Similarly, all nine of Mr. Drake's possession convictions carry the same "statutory intent." RCW 9A.56.140, .310. However, our inquiry does not end. As argued by the State,

Mr. Drake's intent in possessing the stolen firearms may have shifted between the time he obtained the firearms and when he furnished them to Ms. Swift and Mr. Benefield.

In analyzing *Westwood*'s "statutory intent" test, RCW 9A.56.020(1)(a) defines "theft" as to "wrongfully obtain or exert unauthorized control over the property . . . of another . . . with intent to deprive him or her of such property." *See* Clerk's Papers (CP) at 130, 144. The mens rea for possession differs from theft. "Possession" means to "knowingly . . . possess . . . or dispose of stolen property knowing that it has been stolen and to withhold or appropriate the same to the use of any person other than the true owner or person entitled thereto." RCW 9A.56.140(1); CP at 145. Because the statutory mens rea of each crime is similar (the intentional or knowing deprivation or appropriation of another's property), this court may "look at whether the crimes furthered each other" and whether "the nature of the crime did not change significantly throughout." *Westwood*, 2 Wn.3d at 168.

As proved by the State, the nine firearms at issue were taken by Mr. Drake from his father's safe following the destruction of his father's home. As further proved by the State, Mr. Drake's intent in taking the firearms was to deprive his father of the guns. Simultaneous to the theft, Mr. Drake, knowing the firearms had been stolen, knowingly possessed the firearms and appropriated them for his own use. Mr. Drake's theft of the firearms furthered his crimes of possessing the firearms. Albeit, Mr. Drake later delivered the firearms to Ms. Swift and Mr. Benefield, the nature of the crimes did not

change significantly throughout the charging period. Whether Mr. Drake intended to

possess or deliver the stolen firearms, his overarching intent was the deprivation or

appropriation of his father's firearms.

At sentencing, Mr. Drake presented a meritorious argument that his nine theft

convictions constituted the same criminal conduct as his nine possession convictions and

thus were correctly counted as one crime toward his offender score. Although Mr.

Drake's intent in possessing the stolen firearms may have evolved, where, as here, the

record adequately supports more than one conclusion, the matter lies in the court's

discretion.

The trial court did not apply the incorrect legal standard in its same criminal

conduct analysis or offender score calculation, and therefore did not abuse its discretion.

BURDEN OF PROVING SAME CRIMINAL CONDUCT

The State argues the trial court abused its discretion in failing to hold Mr. Drake to

his burden of proving same criminal conduct at sentencing.

The State cites *Graciano*'s holding, "Because this finding [of same criminal

conduct] favors the defendant, it is the defendant who must establish the crimes constitute

the same criminal conduct." 176 Wn.2d at 539.

Although brief and contrary to his earlier position, Mr. Drake's trial counsel did

offer argument supporting same criminal conduct:

> After looking into some of the case law even further, it seems that the intent
> remained the same from the time of taking possession, which merged the—

9

the course of conduct between the theft and the possession. Because he took possession at that time, which was what was alleged at trial, and he maintained that possession up until transfer. What was alleged at trial. So the intent remained the same.

RP at 324-25. Notwithstanding defense counsel's brief argument, there is no statutory prohibition against the court sua sponte conducting a same criminal conduct analysis based on the evidence presented during trial. *See* RCW 9.94A.589(1)(a). Moreover, the "continuing and substantial public interest in ensuring that offenders are sentenced with the correct offender score" would outweigh the question of whether the court or defendant broached the issue. *State v. Rodriguez*, 183 Wn. App. 947, 952, 335 P.3d 448 (2014).

The trial court did not abuse its discretion in failing to hold Mr. Drake to his burden of proving same criminal conduct.

AFFIDAVIT OF PROBABLE CAUSE

The State contends the trial court abused its discretion when it refused its invitation to consider the affidavit of probable cause.

RCW 9.94A.530(2) provides:

In determining any sentence other than a sentence above the standard range, *the trial court may rely on no more information than is admitted by the plea agreement, or admitted, acknowledged, or proved in a trial or at the time of sentencing*, or proven pursuant to RCW 9.94A.537. Where the defendant disputes material facts, the court must either not consider the fact or grant an evidentiary hearing on the point.

(Emphasis added.)

At trial, the State alleged the thefts and possessions occurred between December 1, 2018, and October 25, 2019. Because Mr. Drake disputed specific dates or date ranges between December 1, 2018, and October 25, 2019, Mr. Drake would have had to approve of the court's consideration of the affidavit of probable cause. Alternatively, the State could have requested the trial court hold an evidentiary hearing.

In declining to review the affidavit of probable cause, the court reasoned:

> And then we have the trafficking. So where the state's—where the guns were actually transferred to Mr. Benefield or Ms. Swift, we have dates for that, sometime between October 20th and 22nd is when those—of 2019.
> But the possession at the same time and place, I think it matters how it's charged with the time range, I really do, with the date range. Because a defendant has a right to a jury trial. And what is a jury? The jury is the finder of fact. I'm not the finder of fact. The jury is the finder of fact. And that date range is a fact. That's how it was charged. So I don't know what date the jury decided they were stolen, and if they decided and found that that date was different from the date that they were transferred to Mr. Benefield or Ms. Swift.
> And it's—I know this is a fact-driven analysis, but I think there has to be something more than support from a probable cause statement that's not part of evidence in evidence at trial. And I'm not going to invade the purview of the jury. I think it would trample all over your constitutional right to a jury trial and how the jury of your peers determine what the facts are in your case.
> And so what I have is I have the same date ranges. And I think that's why it matters. And that's all I know about the facts. Ms. Swift's testimony, the state even in their own memorandum says it wasn't clear at trial. But the probable cause statement is. And I'm not going to rely on a probable cause to find facts that weren't found by the jury based on evidence that wasn't presented at trial. So I think that's risky business. It's my discretion, and I won't do it.

RP at 333-34. The court declined to invade the purview of the jury by considering the affidavit of probable cause. This reasoning was sound. Thus, the court's decision was

11

No. 39311-9-III
*State v. Drake*

not based on untenable grounds nor was it manifestly unreasonable. The court did not

abuse its discretion.

Affirmed.

A majority of the panel has determined this opinion will not be printed in

the Washington Appellate Reports, but it will be filed for public record pursuant to

RCW 2.06.040.

_____
Cooney, J.

WE CONCUR:

_____
Lawrence-Berrey, C.J.

_____
Staab, J.

12